# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JON T. TOBIN,

       Plaintiff,

v.                               Case No.  6:18-cv-1426-Orl-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

       Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying his applications for a period of disability, disability insurance

benefits ("DIB"), and supplemental security income ("SSI").  Plaintiff alleges he

became disabled on December 1, 2014.  (Tr. 11, 121.)  A video hearing was held

before the assigned Administrative Law Judge ("ALJ") on April 13, 2017, at which

Plaintiff was represented by counsel.  (Tr. 95-119.)  The ALJ found Plaintiff not

disabled from December 1, 2014, the alleged disability onset date, through

December 4, 2017, the date of the decision.[2]  (Tr. 19.)

Plaintiff is appealing the Commissioner's decision that he was not disabled

---

[1] The parties consented to the exercise of jurisdiction by a United States
Magistrate Judge.  (Doc. 19.)

[2] Plaintiff had to establish disability on or before December 31, 2019, his date last
insured, in order to be entitled to a period of disability and DIB.  (Tr. 15.)

from December 1, 2014 through December 4, 2017. Plaintiff has exhausted

his administrative remedies and the case is properly before the Court. Based on

a review of the record, the briefs, and the applicable law, the Commissioner's

decision is **REVERSED** and **REMANDED**.

## I.   Standard

The scope of this Court's review is limited to determining whether the

Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841

F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are

supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390

(1971). "Substantial evidence is more than a scintilla and is such relevant

evidence as a reasonable person would accept as adequate to support a

conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

2004). Where the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the reviewer would have reached a

contrary result as finder of fact, and even if the reviewer finds that the evidence

preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937

F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991). The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote v.

Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record

to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal. First, he argues that the ALJ's finding that Plaintiff's epilepsy did not meet or medically equal the severity of Listing 11.02 of the Listing of Impairments in the Social Security Regulations was not supported by substantial evidence or based on adequate rationale. (Doc. 21 at 10.) Second, Plaintiff argues that the ALJ failed to properly weigh the medical opinions of record "at each step of the sequential evaluation process." (*Id.* at 13.) Defendant, on the other hand, counters that (1) Plaintiff failed to meet his burden of establishing that his epilepsy met or medically equaled Listing 11.02, and (2) that the ALJ "properly considered and weighed the medical opinions of record." (Doc. 22 at 4, 7.) The Court finds that a remand is required.

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3), 416.920(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

When a treating physician's opinion does not warrant controlling weight, the ALJ

must nevertheless weigh the medical opinion based on: (1) the length of the

treatment relationship and the frequency of examination, (2) the nature and

extent of the treatment relationship, (3) the medical evidence supporting the

opinion, (4) consistency of the medical opinion with the record as a whole, (5)

specialization in the medical issues at issue, and (6) any other factors that tend

to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)-(6),

416.927(c)(2)-(6).  "However, the ALJ is not required to explicitly address each of

those factors.  Rather, the ALJ must provide 'good cause' for rejecting a treating

physician's medical opinions."  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830,

833 (11th Cir. 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight

than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518

(11th Cir. 1984) (per curiam), 20 C.F.R. § 404.1527(c)(2), 416.927(c)(2), "[t]he

opinions of state agency physicians" can outweigh the contrary opinion of a

treating physician if "that opinion has been properly discounted," *Cooper v.*

*Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008).  Further, "the ALJ may

reject any medical opinion if the evidence supports a contrary finding."

*Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar.

9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.

1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

## B.    The ALJ's Findings

At step two of the five-step sequential evaluation process,[3] the ALJ found that Plaintiff's epilepsy[4] was a severe impairment. (Tr. 13.) The ALJ also assessed Plaintiff's ankle impairment, but found it was not severe. (Tr. 14.) At the third step, the ALJ stated:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . . No treating or examining physician has indicated finding [sic] that would satisfy the severity requirements of any listed impairment. Particular attention was given to the listings

---

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

[4] "Epilepsy is a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain. . . . In adults, the most common potentially disabling seizure types are generalized tonic-clonic seizures and dyscognitive seizures (formerly complex partial seizures)." *See Revised Med. Criteria for Evaluating Neurological Disorders*, 81 Fed. Reg. 43048-01, 2016 WL 3551949, at *43054 (July 1, 2016).

in sections [sic] 11.02, but the available medical evidence did not demonstrate the specified criteria required of any listing.

(*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work with the following non-exertional limitations: "He is limited to no climbing of ladders, ropes or scaffolds, all other postural limitations occasionally, and avoiding all exposure to hazards in the workplace." (*Id.*) In assessing Plaintiff's RFC, the ALJ stated that he considered Plaintiff's symptoms, the objective medical evidence, and the opinion evidence. (*Id.*)

The ALJ summarized Plaintiff's testimony as follows:

[H]e lives alone in a house. He testified he has a driver's license, but has not driven since 2013. He testified he relies upon his friends and sister for transportation. He testified he arises between 6:00[] a.m. and 7:00[] a.m. and is able to independently complete personal care. He testified he is able to prepare simple meals such as frozen dinners and deli meats. He testified he completes household chores such as laundry and vacuuming, but does not wash dishes. He testified he spends time during the day checking the weather, talking on the phone with his mother or friends, relaxing outside. He testified he goes shopping at Wal-Mart when his friends aren't too busy to take him. He testified he sleeps 2-3 hours at night because of his medications, and naps during the day.

(*Id.*) The ALJ also considered Plaintiff's testimony "that he had stopped working as a janitor at the Kennedy Space Center after 14 years due to seizures and 'falling asleep a lot.'" (*Id.*) The ALJ continued:

He also testified that he has been diagnosed with seizures since age three and that his medications generally work to control his seizures. However, he feels he is unable to work because of medication side

effects of amnesia, stuttering, shaking, and poor balance. He additionally testified to experiencing 6 seizures per day in the previous week, different from other seizures.

(*Id.*)

After summarizing Plaintiff's testimony regarding his symptoms, daily routine, and alleged limitations, the ALJ concluded that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (Tr. 15.)

The ALJ noted that while Plaintiff's severe impairment of epilepsy is limiting, "he remains capable of work with no climbing of ladders, ropes, or scaffolds, [capable of performing] all other postural activities occasionally, and avoiding all exposure to hazards in the workplace." (*Id.*) The ALJ noted that a large portion of Plaintiff's medical records are dated prior to the alleged onset date of December 1, 2014, and that Plaintiff "reported no seizures and generally denied any problems, as notated in the records through at least April 2015." (*Id.*) The ALJ then summarized the medical evidence as follows:

In October 2015, the claimant complained of daily seizures over the previous 6 months with worsening [sic] stuttering. On examination, the claimant had normal orientation, speech and language. The claimant's medications were reviewed and adjusted, and Dr. Prusinski referred him for follow up with the Mayo clinic and recommended [a] routine one-year neurology follow up. (Ex. 4F/3) In August 2016, the claimant had his annual follow up and continued

with no new neurological symptoms and normal orientation, speech and language. (Ex. 8F) In April 2017, he reported doing well, but also having at least 20 seizures. (Ex. 9F/1-4) In June 2017, Dr. Brogan [sic] primary care records [revealed] the claimant [sic] had normal findings on physical examination including 5/5 motor strength, no limb or joint pain, normal musculoskeletal range of motion and normal mental status findings. (Ex. 14F/1-3)

(Tr. 16.)

The ALJ also assessed the third-party questionnaire completed by Plaintiff's sister,[5] Janell Tobin, dated May 20, 2015. (*Id.*) The ALJ noted that Ms. Tobin indicated that Plaintiff had suffered "more than 10 seizures in the previous 6 months, but admitted it is 'hard to tell' because the claimant lives alone and independently." (*Id.*) The ALJ also noted that Ms. Tobin "indicated the claimant's seizures have been controlled on medication since he was three years old, but believes he has more side effects and problems because he was recently switched to generic brand medications." (*Id.*) Nevertheless, the ALJ found that Ms. Tobin's statements "were of little probative value to the extent [her] statements are inconsistent with the determination herein." (*Id.*) The ALJ reasoned that Ms. Tobin "is not a medical professional and does not live with claimant. As a lay witness, [she] is not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to his ability to work. The

---

[5] The ALJ refers to Ms. Tobin as Plaintiff's brother due to a mistaken reading of the questionnaire. (*See* Tr. 89, 258-59.)

opinion of a layperson is far less persuasive on those same issues than are the

opinions of medical professionals relied on herein."[6]  (*Id.*)

The ALJ then briefly summarized the medical opinions of Christopher

Prusinski, D.O., a treating neurologist, Terri-Ann Brogan, D.O., a treating

physician, and Robert Whittier, M.D., a non-examining State agency medical

consultant, as follows:

> Christopher Prusinski, D.O., [a] treating neurologist[,] completed a
> seizure questionnaire form on behalf of the claimant dated August
> 24, 2016.  (Ex. 6F)  Dr. Prusinski diagnosed the claimant with
> uncontrolled epilepsy, complex partial seizure disorder.  He indicated
> the claimant has 5-6 known seizures a month, most unwitnessed.
> However, he indicated medication helps control the claimant's
> seizures.  He also indicated the claimant would have permanent
> work restrictions, but did not describe any specific limitations.
>
> Terri-Ann Brogan, D.O., [a] treating physician, completed a seizure
> questionnaire form on behalf of the claimant dated June 19, 2017.
> (Ex. 10F)  Dr. Brogan diagnosed the claimant with seizure disorder,
> grand mall [sic] type.  [Dr. Brogan] admitted she was unable to
> assess how many seizures the claimant has on a monthly basis as
> she sees him only one time a year.  However, she indicated the
> claimant has breakthrough seizures on medication, and loss of
> consciousness and alteration of awareness after a seizure.  She
> opined the claimant is unable to drive, use ladders, operate high-risk
> machinery or work at heights."
>
> Robert Whittier, [M.D.], [a] state agency medical consultant,
> reviewed the file on August 25, 2015.  (Ex. 6A; 8A)  Dr. Whittier
> opined that the claimant was able to perform light work, with
> occasional climbing of stairs and ramps, never climbing of ropes,
> ladders, and scaffolds; occasional balancing, stooping, crouching,
> crawling, and kneeling, and [he] should avoid even moderate

---

[6] Ms. Tobin submitted a letter on March 6, 2018, after the ALJ's decision, in
which she indicated that she was a full-time licensed registered nurse.  (Tr. 89 ("I have
been a traveling surgical nurse as well as a full-time RN at Cape Canaveral hospital for
20 years.").)

exposure to hazards.  In [a] written analysis, Dr. Whittier considered the claimant's allegations and reviewed the records of Dr. Prusinski and Dr. Brogan.

(*Id.*)

In determining Plaintiff's RFC, the ALJ stated that he had "given significant weight, but not full weight" to the opinions of Dr. Brogan and Dr. Whittier, and afforded little weight to the opinions of Dr. Prusinski "as his assessments were vague and did not provide any functional limitations."  (Tr. 17.)  The ALJ further explained:

> Nonetheless, the opinions of all these physicians are generally consistent in that they all assess the claimant is able to perform a range of work with customary seizure precautions and limitations with only some differences in the degree of specific function-by-function limitations.  Such opinions and limitations are reasonable and supported by the record as a whole.  No single assessment has been completely adopted as the residual functional capacity determined herein.  I have determined those specific restrictions on a function-by-function basis that are best supported by [the] objective evidence as a whole.

(*Id.*)  The ALJ also indicated that, in formulating the RFC, he had considered Plaintiff's allegations in terms of the subjective factors pursuant to SSR 16-3p, as well as 20 C.F.R. §§ 404.1529 and 416.929, including the "subjective evidence consisting of the testimony and previous statements of the claimant as to his abilities to complete daily activities."[7]  (*Id.*)

---

[7]  The ALJ stated: "[T]he claimant's allegations have been considered in terms of: [] activities of daily living; [] the location, duration, and frequency of symptoms; [] the type of medication and any side effects; [] other treatment the claimant has received; [] any other measures the claimant has used for symptoms relief; [] and any other relevant factors concerning the claimant's alleged restrictions."  (Tr. 17.)

The ALJ determined that, based on his RFC, Plaintiff was unable to perform any past relevant work. (*Id.*) However, "[b]ased on the testimony of the vocational expert," and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff could perform.[8] (Tr. 18.) Thus, the ALJ concluded that Plaintiff was not disabled from December 1, 2014, through December 4, 2017. (Tr. 19.)

## C.    The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff argues that the ALJ erred by failing to fully consider Dr. Prusinski's opinion, that the ALJ's failure to do so was not harmless error, and that the ALJ's rationale for discounting Dr. Prusinski's opinion was not based on substantial evidence or supported by good cause. (Doc. 21 at 15-21.) Plaintiff also argues that, even though all his treating doctors opined that he suffered from daily to weekly seizures and that these seizures caused Plaintiff to experience "alteration of awareness or loss of consciousness," the ALJ's RFC assessment failed to account "for any absences from work or time off task due to seizures." (*Id.* at 13.) Plaintiff asserts that the VE "testified that absences from work of two or three days per month on a consistent basis would preclude any full-time competitive work[.]" (*Id.* at 15.) Plaintiff also points to the VE's testimony that "a loss of consciousness due to a seizure would preclude all competitive work

_____

[8] Given Plaintiff's RFC, the Vocational Expert testified that Plaintiff could work as a laundry worker, small parts assembler, and inspector/hand packer. (Tr. 18.)

because it would be a safety hazard[.]" (*Id.*)  Plaintiff also argues that the ALJ erred in giving the opinion of Dr. Whittier, a non-examining State agency medical expert, significant weight where the opinion was based on a review of the medical record as of August 25, 2015 and, therefore, failed to account for significant evidence in the record after that date.  (*Id.* at 16-17.)

Defendant counters that the ALJ properly weighed the medical opinions of Dr. Prusinski, Dr. Brogan, and Dr. Whittier.  (Doc. 22 at 7.)  Defendant argues that "[s]ubstantial evidence supports the good reasons that the ALJ gave for assigning Dr. Prusinski's opinions little weight as vague and lacking any functional limitations and significant weight to the opinions of Dr. Brogan and [Dr.] Whittier as reasonably supported by the record[.]" (*Id.*)  Defendant also claims that the medical records reflected normal findings in August 2016 ("Plaintiff had no new neurological symptoms and had normal orientation, speech, and language"), and in June 2017 ("Plaintiff had 5/5 motor strength, no limb or joint pain, and normal musculoskeletal range of motion").  (*Id.* at 9 (citing Tr. 15-16, 395, 425).)  Defendant further claims that Dr. Whittier's opinion regarding Plaintiff's limitations and functional capacity "undermines the opinions of Dr. Prusinski."  (Doc. 22 at 9.)

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel*,

631 F.3d at 1179. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (internal citations and quotations omitted). "Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (internal citations and quotations omitted).

As a treating physician, the ALJ should have accorded the opinions of Dr. Prusinski controlling weight, unless he found good cause for not doing so. However, other than labeling Dr. Prusinski's opinions as vague and lacking functional limitations, the ALJ failed to explain with sufficient specificity why he was according little weight to the opinions of Dr. Prusinski, while giving significant, but not full, weight to the opinions of Dr. Brogan and Dr. Whittier. "Without an explanation of the weight accorded by the ALJ, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Lawton*, 431 F. App'x at 834. The ALJ failed to provide good cause for discounting Dr. Prusinski's opinions and his reasons for doing so are not supported by substantial evidence.

In assessing Plaintiff's RFC, the ALJ noted Plaintiff's reports of numerous seizures during the period in question, without making a specific finding about the frequency of Plaintiff's seizures, other than rejecting Plaintiff's subjective claims about the intensity, persistence and limiting effects of "these symptoms" as

inconsistent with the medical evidence and other evidence in the record. (Tr. 15-17.) Here, both Dr. Prusinski and Dr. Brogan opined that Plaintiff's seizures are accompanied by loss of consciousness and alteration of awareness with a postictal period. (*See, e.g.*, Tr. 91, 376, 395, 402, 425.) Dr. Prusinski also opined that Plaintiff suffered from at least five to six seizures per month, and the record shows consistent reporting of daily to weekly seizures, with an increase in breakthrough seizures despite adherence to medication beginning in 2015.[9] (*See* Tr. 15, 91, 258-59, 376, 395-96.)

The ALJ also failed to clearly state his reasoning for giving different weight to Dr. Brogan's and Dr. Prusinski's opinions where they both opined that Plaintiff suffers from breakthrough seizures despite his compliance with medication, and

---

[9] On May 20, 2015, Ms. Tobin stated that Plaintiff was having a few known seizures per month and that he had more than ten seizures in the preceding six months, but that it was difficult to determine "the exact number as he lives alone [and] does not know all the time." (Tr. 258-59.) On October 7, 2015, Plaintiff reported he was having "daily seizures over the past six months along with worsened stuttering." (Tr. 396.) He also claimed to have had a seizure the week prior "while mowing the lawn and almost fell into the canal." (*Id.*) Dr. Prusinski noted that Plaintiff "is experiencing memory difficulties" and reported having "'staring spells and convulsive' seizures." (*Id.*) Dr. Prusinski recommended an epileptology evaluation at Mayo Clinic "which is medically necessary." (*Id.*) A neurologic follow-up report dated August 24, 2016 with Dr. Prusinski revealed Plaintiff was unable to afford the epileptology evaluation. (Tr. 395.) Dr. Prusinski also noted: "The patient reports that he continues to experience seizures that can occur daily, worse since he is now taking generic anti-convulsants. He is also experiencing stuttering." (Tr. 395.) On April 25, 2017, Plaintiff reported having three daily seizures since December 2016. (Tr. 397.) On June 19, 2017, Dr. Brogan opined that Plaintiff "has been under the care of a neurologist, but continues to have breakthrough seizures." (Tr. 425.) In a letter dated February 23, 2018, Plaintiff's treating neurologist, Fernando Gonzalez-Portillo, M.D., also confirmed that Plaintiff takes Dilantin and Keppra to control his seizures, but that "[d]espite several anti-epileptic drugs, his seizures are difficult to control. He has at least 3 seizures a day." (Tr. 91.)

that Plaintiff's seizures are accompanied by alteration of awareness and loss of consciousness. (Tr. 17.) While Dr. Prusinski opined that Plaintiff suffered from five to six known seizures per month, Dr. Brogan stated that she was unable to assess the average number of seizures Plaintiff suffered because she only saw him once a year. (Tr. 16, 376, 425.) The record shows that Dr. Brogan's opinions support rather than undermine or contradict Dr. Prusinski's opinions. Nevertheless, the ALJ accorded different weight to Dr. Brogan's and Dr. Prusinski's opinions without specifying which particular opinions he was rejecting. To the extent Dr. Brogan and Dr. Prusinski both opined that Plaintiff suffers from breakthrough seizures resulting in alteration of awareness and loss of consciousness, it is not clear that the ALJ's findings are based on substantial evidence.[10] Thus, it is unclear whether the ALJ properly considered these opinions, or whether the ALJ simply substituted his opinion for the medical opinions of Plaintiff's treating physicians. If he rejected them, he failed to adequately state the reason for doing so when formulating the RFC and in considering the VE's testimony.

Additionally, in discussing the medical evidence, the ALJ isolated normal findings while discounting probative evidence without providing adequate

---

[10] In response to Plaintiff's counsel's question regarding an "employe[r]'s tolerance for being off task, and having loss of consciousness with residual periods," the VE testified: "In my experience, the off task tolerance is no more than 10% of the workday. A loss of consciousness, in my experience, would preclude all competitive work. That would be a safety hazard." (Tr. 115.)

reasoning for doing so.  For example, in providing an overview of the medical

evidence, the ALJ noted that "[i]n August 2016, the claimant had his annual

follow up and continued with no new neurological symptoms and normal

orientation, speech and language."  (Tr. 16.)  However, in that same August 24,

2016 report, Dr. Prusinski also noted:

> The patient was last seen in neurologic follow up after having last
> been seen by me on 10-7-15, accompanied by his sister.  The
> patient reports that he continues to experience seizures which can
> occur daily, worse since he is now taking generic anti-convulsants.
> He is also experiencing stuttering. . . . I have recommended [a] Mayo
> clinic evaluation which is medically necessary, however the patient is
> unable to afford such.

(Tr. 395.)  Similarly, with respect to a report from Dr. Brogan, the ALJ

summarized the June 19, 2017 report as follows: "In June 2017, Dr. Brogan [sic]

primary care records [revealed] the claimant [sic] had normal findings on physical

examination including 5/5 motor strength, no limb or joint pain, normal

musculoskeletal range of motion and normal mental status findings."  However,

in this report, Dr. Brogan also opined:

> [Plaintiff] has been under the care of a neurologist, but continues to
> have breakthrough seizures.  He is unable to work without limitations
> due to seizures and does not drive.  He additionally uses Klonapin
> for relief of anxiety symptoms.  Follow up for medication
> management in 6 months.  He also appears to be having some
> decline in his short and long[-]term memory that will need further
> evaluation with his neurologist.

(Tr. 425.)  Although the ALJ is not required to refer to every piece of evidence in

his decision, he may not ignore relevant evidence, particularly when it supports

Plaintiff's position.  *See, e.g.*, *Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000);

*Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . .  Rather, the judge must explain why significant probative evidence has been rejected.") (internal citations and quotation marks omitted).  The evidence at issue supports Plaintiff's position and is consistent with the overall record; however, the ALJ failed to explain why it was discounted.

Furthermore, to the extent the ALJ gave significant weight to Dr. Whittier's opinions while giving Dr. Prusinski's opinions little weigh, he failed to clearly articulate his reasoning for doing so.  *See Wilson v. Heckler*, 734 F.2d at 518 (stating that a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ failed to explain why Dr. Whittier's opinion, based on his review of the medical record as of August 25, 2015, was entitled to significant weight where the opinion failed to take into account significant medical evidence in the record which tends to support Plaintiff's claims.  Thus, the ALJ erred in failing to properly discount Dr. Prusinski's opinions while according greater weight to Dr. Whittier, a State agency consulting physician.

Based on the foregoing, the Court is unable to conclude that the ALJ's decision is supported by substantial evidence.  *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits,

to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"). Therefore, this case will be remanded with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including all opinion evidence from Dr. Prusinski.

### D. Step Three & Listing 11.02

Plaintiff also argues that the ALJ erred at step three of the sequential evaluation process. At step three, "the burden of proving that his impairment meets or equals a listed impairment" rests with the claimant. *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991). "To meet the requirements of a Listing, the claimant must have a diagnosis included in the Listing and must provide medical reports documenting that the condition meets the Listing's specific criteria and duration requirement." *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam)).

"An impairment—no matter how severe—that meets only some of the Listing requirements does not qualify." *Id.* (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)). "The ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record." *Id.* (citing *Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir.1986) ("There may be an implied finding that a claimant does not meet a listing.")).

"Furthermore, although the ALJ must consider the Listings in making her disability determination, she is not required to recite mechanically the evidence leading to her ultimate determination." *Bellew*, 605 F. App'x at 920. However, "an ALJ's implicit conclusion regarding whether a claimant's condition[] meets a listing must also be supported by substantial evidence." *Williams v. Berryhill*, No. 3:17-cv-790-J-39JBT, 2018 WL 6620507, at *2 (M.D. Fla. Sept. 12, 2018) (citing *Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 970 (11th Cir. 2014)). "[T]he Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence." *Williams*, 2018 WL 6620507, at *2 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)).

The current version of Listing 11.02 requires a claimant to establish the following:

> 11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
>> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>>
>> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>>
>> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>>> 1. Physical functioning (see 11.00G3a); or

2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
3. Interacting with others (see 11.00G3b(ii)); or
4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
5. Adapting or managing oneself (see 11.00G3b(iv)); or

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
1. Physical functioning (see 11.00G3a); or
2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
3. Interacting with others (see 11.00G3b(ii)); or
4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02.[11] Furthermore, under 11.00H(2), Plaintiff must provide "at least one detailed description of [his] seizures from someone, preferably a medical professional, who has observed at least one of [his] typical seizures." *See Revised Med. Criteria for Evaluating Neurological Disorders*, 81 Fed. Reg. 43048-01, 2016 WL 3551949, at *43054.

Here the ALJ concluded: "No treating or examining physician has indicated finding[s] that would satisfy the severity requirements of any listed impairment. Particular attention was given to the listings in section[] 11.02, but the available

---

[11] In his Memorandum of Law (Doc. 21), Plaintiff relies on the current version of Listing 11.02 which went into effect on March 14, 2018. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Although the ALJ rendered his decision on December 4, 2017, because the Commissioner made a final determination on Plaintiff's claim on July 2, 2018 (Tr. 1-4 (Notice of Appeals Counsel Action denying Plaintiff's request for review of the ALJ's decision)), "the Court applies the version of Listing 11.02 that was in effect at the time of the Commissioner's decision in this case." *Schake v. Berryhill*, No. 0:17-cv-01831-KMM, 2018 WL 4469250, at *5 n.4 (D. Minn. Sept. 18, 2018).

medical evidence did not demonstrate the specified criteria required of any listing." (Tr. 14.) Plaintiff, however, argues that the ALJ erred in failing to consider evidence in the record, including Ms. Tobin's May 20, 2015 supplemental third-party questionnaire (Tr. 258-59) and the medical opinions of Dr. Prusinski and Dr. Brogan, in finding that he did not meet the requirements under Listing 11.02. (Doc. 21 at 11-13.) Plaintiff argues that the evidence supports a finding that he meets Listing 11.02A and B and that his sister's questionnaire response satisfied the typical seizure description requirement. (*Id.* at 12.) Defendant, on the other hand, argues that "Plaintiff failed to cite to any evidence documenting a detailed description of a typical seizure, occurring more than once a month, despite at least three months of treatment."[12] (Doc. 22 at 5.) Defendant also argues that the medical evidence failed to "establish he had seizures despite adherence to prescribed treatment at the frequency required to satisfy any subsection of Listing 11.02." (*Id.* at 6.) Specifically, Defendant alleges that Plaintiff denied seizure activity to Dr. Prusinski on April 29, 2015,

---

[12] Defendant appears to cite to Listing 11.02 in effect at the time the ALJ issued his decision, which required:

[C]onvulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment [w]ith:

A. Daytime episodes (loss of consciousness and convulsive seizures) or
B. Nocturnal episodes manifesting residuals which interfere with activity during the day.

(*See* Doc. 22 at 5.)

October 29, 2014, and February 26, 2014.  (*Id.* at 7 (citing to Tr. 342-44, 363-64).)  Defendant's arguments are unpersuasive.

The record reflects that Plaintiff has been diagnosed with uncontrolled epilepsy on polypharmacy, complex partial seizure disorder (Tr. 376 (Dr. Prusinski's diagnosis), and seizure disorder, grand mal type (Tr. 402 (Dr. Brogan's diagnosis).  Plaintiff's treating physicians also opined that he continues to experience seizures despite taking medication.  (*See* Tr. 91 ("Despite several anti-epileptic drugs, his seizures are difficult to control.  He has at least 3 seizures a day."); *see also* Tr. 395, 425.)  The record also provides various descriptions of Plaintiff's seizures and "associated phenomena," including Ms. Tobin's May 20, 2015 questionnaire response.[13]  (Tr. 258-59 (stating that Plaintiff gets quiet before a seizure, that he can have a tonic clonic or complex partial seizure since it varies, and that after a seizure he is very tired, confused and often hungry).)  Dr. Brogan also opined that Plaintiff has "both alteration of awareness [and] loss of consciousness with postictal periods" with his seizures.

---

[13] Although the ALJ discounted Ms. Tobin's opinions in formulating Plaintiff's RFC, he failed to acknowledge Ms. Tobin's description of Plaintiff's seizures.  (Tr. 16.)  Furthermore, on March 6, 2018, Plaintiff submitted additional evidence for consideration by the Appeals Council, including another letter from Ms. Tobin and a letter from Robert Henk, a caretaker, indicating that Plaintiff was suffering from an increase in the number of seizures and that his condition was worsening.  (Tr. 89-90.)  In her letter, Ms. Tobin stated: "I am reiterating as a sister[,] but also as a professional licensed RN[,] [s]everal doctors as well as myself have witnessed Jon over the last few years slip health wise. . . . The increased number of seizures under normal conditions has made it impossible for Jon to drive a car, operate machinery, bicycle or in some cases even walk along the highway for the bus."  (Tr. 89.)

(Doc. 402.)  With respect to the number of seizures Plaintiff experiences, the record shows consistent reporting of daily to weekly seizures, with an increase in breakthrough seizures despite medication beginning in 2015.  (*See, e.g.*, Tr. 15, 91, 258-59, 376, 395-96.)

After reviewing the record as a whole, it is unclear whether the ALJ considered the entire record when making his determination at step three.  Thus, the Court is left to speculate as to whether the ALJ gave due consideration to evidence that tends to support a finding that Plaintiff's severe epilepsy meets or equals the requirements of Listing 11.02.  As the Court's function is not to engage in fact-finding or to re-weigh the evidence, a remand for further administrative proceedings is required.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g) with instructions to the Commissioner to: (a) reevaluate whether Plaintiff's condition meets or equals Listing 11.02; (b) state with specificity the weight accorded to the opinions of Dr. Brogan and Dr. Prusinski and articulate good cause if such opinions are discounted; (c) reconsider Plaintiff's residual functional capacity if appropriate; and (d) conduct any further proceedings deemed appropriate.

2.      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.    In the event that benefits are awarded on remand, any § 406(b) or §

1383(d)(2) fee application shall be filed within the parameters set forth by the

Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42*

*U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov.

13, 2012).  This Order does not extend the time limits for filing a motion for

attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

   **DONE and ORDERED** in Jacksonville, Florida, on August 14, 2019.

                                    MONTE C. RICHARDSON
                                    UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record